UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-23545-CIV-ALTONAGA/Torres

**EDWARD MENDEZ**,

      Plaintiff,

v.

**T-MOBILE USA, INC.**,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant, T-Mobile USA, Inc.'s Motion to Compel Arbitration [ECF No. 24], filed on December 6, 2021. Plaintiff, Edward Mendez, filed a Response in Opposition [ECF No. 25], and Defendant filed a Reply [ECF No. 26]. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## BACKGROUND

Defendant offers prepaid wireless phone plans to more than 18 million customers under the brand "Metro by T-Mobile." (Norris Decl. [ECF No. 24-2] ¶ 2). Plaintiff is one of those customers. He alleges that he "entered into a contract with" Defendant on August 5, 2010. (Compl. ¶ 10). On that date, Plaintiff opened a Metro account. (*See* Norris Decl. ¶ 5). Just under two years later, Plaintiff activated a line of service with Defendant. (*See id.* ¶ 7).

Defendant provides customers with its Terms and Conditions upon activation of phone service. (*See id.* ¶ 10). When Plaintiff activated his Metro account, the Terms and Conditions included an arbitration provision. (*See id.*, Ex. A, Feb. 2010 Terms & Conditions [ECF No. 24-2]

22).[1] The Terms and Conditions permitted Plaintiff and other customers to opt out of the arbitration agreement within 30 days of activating service. (*See id.*). Defendant promised that opting out would "not adversely affect [its] delivery of service" to its customers. (*Id.* (alteration added)). Plaintiff never opted out. (*See* Norris Decl. ¶ 39).

Customers may accept the Terms and Conditions in a variety of ways. When customers, including Plaintiff, purchase a new Metro device, they receive a one-page sheet that outlines the Terms and Conditions, describes return and upgrade policies, and provides the website address for the full version of the Terms and Conditions. (*See id*. ¶ 20). This "Information Sheet" states in boldface print that customers may accept the Terms and Conditions by writing their signature, activating service, using service, paying for service, or failing to activate service within 30 days after purchasing a new device. (*Id.* ¶ 22; *see also id.*, Ex. H, MetroPCS Policies 140). The Information Sheet also provides: "By activating or using Metro Service, you agree to the Metro Terms and Conditions of Service. Metro requires Arbitration of Disputes unless you opt-out within 30 days of activating. Details and the full version can be viewed at metropcs.com/terms." (Norris Decl. ¶ 21; MetroPCS Policies 140).

Defendant periodically updates the Terms and Conditions. (*See* Norris Decl. ¶ 19). When it does so, customers may refuse to accept the changes by discontinuing service or notifying Defendant in writing within 10 days of being notified of the amendment. (*See, e.g.*, Feb. 2010 Terms & Conditions 14–15; Norris Decl., Ex. F, Mar. 2021 Terms & Conditions 125). The most recent update came on March 1, 2021. (*See* Norris Decl. ¶¶ 17, 29). The March 2021 Terms and Conditions provide that customers accept them by activating, using, or paying for phone service

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Case 1:21-cv-23545-CMA Document 27 Entered on FLSD Docket 01/10/2022 Page 3 of 9

CASE NO. 21-23545-CIV-ALTONAGA/Torres

or a device. (*See* Mar. 2021 Terms & Conditions 125). Since March 2021, Plaintiff has paid for service several times. (*See* Norris Decl. ¶ 31).

The March 2021 Terms and Conditions contain an arbitration clause with essentially the same language as the arbitration clause in effect when Plaintiff opened his Metro account.[2] (*Compare* Mar. 2021 Terms & Conditions 126 *with* Feb. 2010 Terms & Conditions 22–23). The clause reads:

> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, OUR SERVICES, DEVICES, OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** . . . You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision . . . .
>
> The arbitration of all disputes will be administered by the [American Arbitration Association ("AAA")] under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflicts with our agreement in these [Terms and Conditions.]

(Mar. 2021 Terms & Conditions 126 (alterations added)). Customers who agree to the Terms and Conditions also agree to waive their rights to a jury trial, bring a class action lawsuit, and pursue certain types of remedies, including punitive damages. (*See id.* 127, 137).

Defendant maintains a policy of including a sticker on the box containing new Metro devices. (*See* Norris Decl. ¶ 23). Customers cannot open the box until they remove the sticker. (*See id.*). The sticker alerts customers to both the Terms and Conditions and the arbitration agreement. (*See id.* ¶¶ 23–24). At least three different times, Plaintiff received Metro devices in boxes sealed by the sticker. (*See id.* ¶ 25).

---

[2] Unlike the arbitration agreement in effect in 2010, the March 2021 Terms and Conditions require arbitration before the American Arbitration Association ("AAA") and do not permit arbitration before JAMS. (*Compare* Mar. 2021 Terms & Conditions 126 *with* Feb. 2010 Terms & Conditions 23).

Defendant also maintains a policy of sending customers an SMS text message both when they activate a new line of service and eight days before their monthly payment is due. (*See id.* ¶¶ 26–27). Each message directs customers to the full version of the Terms and Conditions online. (*See id.*). Plaintiff received three of these messages after becoming a customer. (*See id.* ¶ 28).

Plaintiff says that he "never saw" Defendant's Terms and Conditions, "do[es] not recall ever signing anything electronically or consenting to anything electronically[,]" and "was unaware" that he "was waiving [his] legal rights." (Resp., Ex. 1, Mendez Aff. [ECF No. 25-1] ¶¶ 6–8 (alterations added)). He also maintains that when he purchased a phone at a Metro store, a store employee "held [his] new phone through the entire process." (*Id.* ¶ 6 (alteration added)).

Plaintiff filed this lawsuit on October 7, 2021. He alleges that Defendant failed to adequately protect him from hackers who stole $238,924.21 worth of Bitcoin from him by transferring access to his registered "subscriber identity module" card, or SIM card, to a SIM card controlled by a third party. (Compl. ¶ 41 (quotation marks omitted); *see id.* ¶¶ 74–77). Plaintiff asserts five causes of action: violation of the Federal Communications Act (Count I); negligence (Count II); gross negligence (Count III); negligent hiring, retention, and supervision (Count IV); and violation of the Computer Fraud and Abuse Act (Count V). (*See id.* ¶¶ 102–67). As stated, Defendant now moves to compel arbitration.

## LEGAL STANDARD

"Arbitration is a matter of contract[.]" *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (alteration adopted; other alteration added; quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The Federal Arbitration Act ("FAA") makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. The FAA evinces a "liberal federal policy favoring arbitration," as well as a respect for the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted). Nonetheless, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Olsher Metals Corp. v. Olsher*, No. 01-3212-Civ, 2003 WL 25600635, at *3 (S.D. Fla. Mar. 26, 2003) (quotation marks omitted; quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986)).

Normally, the question of whether an arbitration agreement is valid is for a court, not an arbitrator, to decide. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). But parties to an arbitration agreement may delegate determinations of arbitrability to the arbitrator in the first instance by "clearly and unmistakably" agreeing to do so. *U.S. Nutraceuticals*, 769 F.3d at 1311 (quotation marks omitted; quoting *AT&T Techs., Inc.*, 475 U.S. at 649).

State law generally governs the validity, enforceability, and revocability of arbitration agreements. *See Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). "Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (quoting 9 U.S.C. § 2). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* (citing *Southland Corp. v. Keating*, 465 U.S. 1, 4–5 (1984)). "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the

5

agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* (footnote call number omitted).

An arbitration provision is severable from the contract that contains it. *See id.* at 445. So, challenges to the enforceability of a contract as a whole — rather than specifically to the arbitration provision within the contract — should be decided by an arbitrator, not a court. *See id.* at 445–46; *see also Benoay v. Prudential-Bache Secs., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986). Provisions that delegate to an arbitrator the authority to decide threshold questions of arbitrability are likewise severable from the contract containing them and must be specifically challenged to avoid arbitration. *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015)).

## DISCUSSION

Typically, when a party moves to compel arbitration, the Court must decide the threshold question of whether the parties in fact agreed to arbitrate. *See U.S. Nutraceuticals*, 769 F.3d at 1311 (quoting *AT&T Techs.*, 475 U.S. at 649). Still, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted). An arbitration agreement may submit these gateway questions to an arbitrator by showing "a clear and unmistakable intent" to do so. *JPay, Inc. v. Kobel*, 904 F.3d 923, 927 (11th Cir. 2018).

When parties agree to arbitrate threshold questions, courts must refrain from ruling on arbitrability and permit an arbitrator to make the call. *See id.* at 937–38. "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks

6

that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The Terms and Conditions' arbitration clause does not contain an express delegation of gateway questions. But it does provide that "arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced[.]" (Mar. 2021 Terms & Conditions 126 (alteration added)). Rule 14 of the AAA's Consumer Arbitration Rules provides:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator shall not for that reason alone render invalid the arbitration clause.

(Moon Decl., Ex. A, AAA Consumer Arb. Rules [ECF No. 24-1] 20).

Controlling precedent permits only one conclusion here. The Eleventh Circuit has repeatedly held that incorporating the AAA rules into an arbitration agreement "clearly and unmistakably evince[s] an intent to delegate questions of arbitrability." *JPay*, 904 F.3d at 937 (alteration added); *see also Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233–34 (11th Cir. 2018); *U.S. Nutraceuticals*, 769 F.3d at 1311; *Terminix Int'l*, 432 F.3d at 1332. Consequently, "[b]y incorporating the AAA Rules," including Rule 14, "into their agreement," Plaintiff and Defendant "clearly and unmistakably agreed that the arbitrator should decide" gateway arbitrability issues. *Terminix Int'l*, 432 F.3d at 1332 (alterations added; collecting cases). That agreement encompasses "any objections with respect to the existence, scope, or validity of the

arbitration agreement or to the arbitrability of any claim[.]" (AAA Consumer Arb. Rules 20 (alteration added)).

After determining that an arbitration agreement clearly and unmistakably delegates gateway questions to an arbitrator, a court's role becomes very limited. In that event, courts may entertain only challenges to "the delegation provision *specifically* — and not just the agreement as a whole[.]" *Jones*, 866 F.3d at 1264 (alteration and emphasis added; citing *Parnell*, 804 F.3d at 1146). This "severability" principle protects the parties' right to contract. Indeed, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70 (alteration added).

Plaintiff launches a frontal attack on the Terms and Conditions, arguing that they are unconscionable, violate public policy, are unconstitutional, and resulted from fraud in the execution.[3] (*See* Resp. 5, 15–17). He even disputes ever having agreed to the Terms and Conditions. (*See id.* 1). Yet not a single one of Plaintiff's arguments specifically challenges the arbitration clause's delegation provision.[4] On the contrary, Plaintiff unequivocally rests his opposition to arbitration on the contention that "the entire [a]greement is unenforceable[.]" (Resp. 7 (alterations added)). Without a challenge to the Terms and Conditions' severable delegation

---

[3] Plaintiff does not expressly argue that his claims are beyond the scope of the arbitration clause, but his extensive quotation of a Florida case, *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999), suggests that he contests whether the clause applies to his claims. (*See* Resp. 9). Either way, the scope of the arbitration clause is a question for an arbitrator. (*See* AAA Consumer Arb. Rules 20 (permitting arbitrators to resolve "objections with respect to the existence, *scope*, or validity of the arbitration agreement" (emphasis added))).

[4] Nor does Plaintiff specifically challenge the enforceability of the Terms and Conditions' arbitration clause, which is also severable from the remainder of the Terms and Conditions. *See Buckeye Check Cashing*, 546 U.S. at 445–46; *see also Benoay*, 805 F.2d at 1441 ("If . . . Benoay's claims of adhesion, unconscionability, waiver of judicial remedies without knowledge, and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration." (alteration added; citations omitted)).

8

provision, there is nothing left for the Court to do — other than compel arbitration and stay the case. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, T-Mobile USA, Inc.'s Motion to Compel Arbitration **[ECF No. 24]** is **GRANTED.** All counts in the Complaint are referred to arbitration. This matter is **STAYED** to allow the parties to arbitrate Plaintiff's claims. The Clerk of Court is directed to administratively **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 10th day of January, 2022.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record