**Exhibit A**

**AMERICAN ARBITRATION ASSOCIATION**

In the Matter of the Arbitration between

Case Number: 01-22-0001-1162

Edward Mendez, Claimant
-vs-
T-Mobile USA, Inc., Respondent

**AWARD OF ARBITRATOR**

I, Laura M. Reich, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named Parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at an evidentiary hearing held on February 13-15, 2024, and having reviewed the pre- and post-hearing submissions and evidence presented by the Parties, do hereby issue this AWARD as follows:

Claimant has asserted the following claims against Respondent: Count I: Violation of the Federal Communications Act ("FCA"); Count II: Negligence; Count III: Gross Negligence; Count IV: Negligent Hiring, Retention, and Supervision; Count V: Violation of the Computer Fraud and Abuse Act; and Count VI: Breach of Contract. In its March 18, 2024 submission, Claimant asserts that "The first four counts have been proven well beyond the required standard of preponderance of evidence" and that punitive damages are warranted for "T-Mobile's willful and reckless conduct." Respondent denies all claims and all responsibility for Claimant's losses and damages.

It is undisputed that an unknown individual or individuals obtained unauthorized access to the systems of Respondent T-Mobile USA, Inc. d/b/a Metro by T-Mobile ("Metro") to perform an unauthorized SIM swap on Claimant's phone line. The SIM swap alone, however, did not result in Claimant's financial loss. Claimant contracted with Respondent for a phone plan; he did not contract with Respondent to provide him with Internet security or to secure his cryptocurrency assets. When services are used for purposes other than what they were intended – in this case, other than for a phone plan – there is the possibility of unintended and unfortunate consequences. Clearly, the consequences of Claimant using SMS-based two-factor authentication ("SMS 2FA") to secure his e-wallet were not only unintended and unfortunate but also extremely damaging to Claimant, both personally and professionally. Moreover, although much ink has been spilled by both Parties over the security of both e-wallets generally and SMS 2FA as means of security and authentication specifically, it is undeniable that SMS 2FA is commonly and widely used – including by the IRS, numerous banks and other financial institutions, and even the AAA itself. But it does not follow that because Claimant reasonably trusted SMS 2FA to secure his cryptocurrency assets, or that because Claimant's losses were personally and professionally damaging, that Respondent is legally responsible for Claimant's loss.

Claimant's claims and requested relief are barred by Respondent's Terms & Conditions ("T&Cs"), which state that Respondent provides its services "on an 'as is' and 'with all faults' basis and without warranties of any kind." Significantly, the T&Cs state, "We make no representations or warranties, express or implied, including any implied warranty of merchantability or fitness for a particular purpose, *including security or authentication purposes*, concerning your Service or your Device. While we strive to protect customer accounts, *we do not guarantee security*. *You accept responsibility if you use your Service as a means of security or authentication for other accounts*." R-001, Ex. G (emphasis added). Moreover, the T&Cs expressly limit Respondent's liability if Claimant decided to use his phone line "to authenticate, access, use or make changes to third party accounts, including financial, *cryptocurrency*, or social media accounts." *Id.*

Case No. 01-22-0001-1162                                1

(emphasis added).  The limitation on liability provision also states, "To the extent permitted by law, you and we each agree to limit claims for damages, or other monetary relief against each other to direct and actual damages regardless of the theory of liability. This means that neither of us will seek any indirect, special, consequential, treble, or punitive damages from the other. . . .  You agree we are not liable for problems caused by you or a third party, by any act of nature, or by any criminal activity by someone unrelated to [T-Mobile]. *Id.*  Simply put, these contractual provisions prohibit Claimant from holding Respondent liable for the criminal acts of others regarding accessing, using, or making changes to his account, service, or device, or from recovering the compensatory or punitive damages he seeks for such illegal and unauthorized actions.

Furthermore, Claimant has failed to prove that Respondent's actions were the proximate cause of Claimant's losses and damages.  Specifically, Claimant has failed to establish the causal nexus between the unauthorized SIM swap and his cryptocurrency loss.  Indeed, it was not the SIM swap, or even a data breach by Respondent, that directly caused Claimant's losses—rather, his losses arise from the actions of third-parties (*i.e.*, criminals) who gained unauthorized access to his cryptocurrency stored in a Coinbase account and secured via SMS 2FA.  In this regard, although the theft was far more sophisticated and was accomplished through the misuse of technology, Claimant is no different than any other unfortunate victim of a more usual kind of theft: his wallet was stolen and the funds in it disappeared.

Additionally, it appears that the criminals obtained Claimant's Coinbase password through some unknown means prior to the SIM swap, as demonstrated by the fact that (1) Coinbase's policy to institute a 48-hour hold on withdrawals if a password reset was requested from a new device was not triggered; (2) Claimant's Coinbase activity logs only show a password reset on the key date by the Claimant himself, not by any third-party; and (3) Claimant's Metro account records do not contain any text messages from Google or Coinbase with authentication codes to change the passwords to those accounts.  Accordingly, Claimant has not sufficiently established that the SIM swap proximately caused his Coinbase account to be compromised.

As the failure of causation, as well as the previously discussed provisions in the T&Cs, completely resolve and bar Claimant's claims for relief, it is unnecessary to continue and consider the remaining defenses raised by Respondent, nor is it required to evaluate the various bases and calculations of damages proposed by Claimant.  An award is therefore entered in favor of Respondent on each and every cause of action raised by Claimant, and Claimant is not entitled to an award of compensatory, punitive, or other damages, nor of attorney fees or costs.

The administrative fees of the American Arbitration Association totaling $2,650.00 shall be borne as incurred, and the compensation of the arbitrator totaling $7,500.00 shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly addressed or resolved herein are hereby denied.

|  |  |
|---|---|
| April 24, 2024 | *Laura M. Reich* |
| Date | Laura M. Reich, Arbitrator |

Case No. 01-22-0001-1162                                                              2