UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-23545-CMA

EDWARD MENDEZ,

    Plaintiff,

v.

T-MOBILE USA, INC.

    Defendant.
_____/

**EDWARD MENDEZ'S REPLY BRIEF TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO AMENDED MOTION TO VACATE ARBITRATION AWARD**

Now comes, Plaintiff Edward Mendez ("Mendez"), by and through the undersigned counsel, hereby files this Reply to Defendant's T-Mobile's Motion in Opposition to Plaintiff's Motion to Vacate Arbitration Award. In support thereof, Plaintiff states as follows:

**INTRODUCTION**

The American Arbitration Association ("AAA") operates without any formal audit mechanism, allowing arbitrators' decisions to remain unchecked and shielded from public scrutiny, with outcomes known only to the arbitrators and the corporations that engage them. This lack of transparency disproportionately benefits corporations, who are privy to an arbitrator's track record, while consumers are left in the dark. This imbalance creates a significant conflict of interest, as ruling against a corporation could effectively blacklist an arbitrator from future consideration, jeopardizing their professional standing.

In this case, Arbitrator Laura Reich, of Harper Meyer, LLP, issued a decision that flagrantly disregards federal law and exceeds her powers and authority as an arbitrator. Specifically,

Arbitrator Reich's ruling ignores the non-waivable statutory duty imposed by the Federal Communications Act ("FCA"), 47 U.S.C. § 222, which mandates that telecommunications carriers protect Customer Proprietary Network Information ("CPNI"). The Federal Communications Commission ("FCC") has unambiguously stated that such obligations cannot be waived by contractual disclaimers, emphasizing in its rulemaking that "telecommunications carriers must take reasonable measures to protect against unauthorized access to CPNI, which includes preventing SIM swap fraud." See Protecting Consumers from SIM Swap and Port-Out Fraud, 88 FR 86614, December 14, 2023.

Despite the clear statutory mandate, Arbitrator Reich's decision failed to address these federal requirements, instead aligning with T-Mobile, USA's contractually dictated terms, which she falsely deemed sufficient to override statutory protections. There is no legal foundation for an arbitrator to dismiss an injured party's statutory remedies based on the contractual provisions imposed by a telecommunications company.

Arbitrator Reich's decision also disregarded the expert testimony of Law Professor Mark Rasch and Allison Nixon from Expert Cybersecurity Firm Unit 221B, both of whom unequivocally testified that T-Mobile, USA's actions violated the Federal Communications Act and were the proximate cause of the Plaintiff's loss of cryptocurrency from her Coinbase account. (See Exhibit "A," Affidavit of Mark Rasch, Esq.) The breach did not occur because of Coinbase, one of the most well-known cryptocurrency exchanges, widely recognized as a reputable and reliable platform for buying, selling, and trading various cryptocurrencies like Bitcoin, Ethereum, and others. Instead, it occurred because T-Mobile failed to implement adequate cybersecurity measures to safeguard Mr. Mendez's account, as detailed in Mark Rasch's affidavit.

Furthermore, Arbitrator Reich's omission of any reference to the relevant federal statutes in her order is a glaring oversight that underscores her failure to properly apply the law. This omission was not a mere oversight; rather, it was a deliberate attempt to sidestep the legal obligations of T-Mobile, USA, by narrowly interpreting their terms and conditions as only providing phone service, thereby disregarding Plaintiff Edward Mendez's valid legal arguments.

Arbitrator Reich confided to T-Mobile's counsel that she aspired to become a full-time arbitrator, raising serious concerns about her impartiality and objectivity. This disclosure suggests that Arbitrator Reich's decision was influenced by her personal ambition to secure future appointments, which inherently favors ruling in favor of major corporations.

Given the egregious nature of this ruling and the profound disregard for federal law, the extreme remedy of vacatur is not only warranted but necessary to correct this grave miscarriage of justice.

1. **Statutory Interpretation and Statutory Remedies**

Plaintiff unequivocally possesses a private cause of action against T-Mobile for its violations of the Federal Communications Act ("FCA"). Section 206 of the FCA expressly establishes this right by providing:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this Act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this Act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this Act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

The Arbitrator's failure to rule on the merits of the Federal Communications Act ("FCA") claims, as evidenced by the Final Award, is a clear abdication of her duty to apply the law. Her decision to halt the analysis at the Limitation of Liability clause is legally untenable. It is well-

established that contractual terms and conditions cannot nullify T-Mobile's statutory obligations under the FCA. Any attempt by T-Mobile to disclaim these statutory duties through contractual provisions is void as it contravenes public policy.

Moreover, the timing of the cryptocurrency theft immediately following the SIM swap incontrovertibly establishes that the SIM swap was the proximate cause of the theft. The very purpose of a SIM swap in this context is to intercept SMS-based two-factor authentication codes, which are essential for accessing accounts or resetting passwords. Without control over the Plaintiff's phone number, the attackers would have been unable to circumvent these security measures and steal the cryptocurrency.

The Arbitrator's omission of this direct causation between the SIM swap and the theft disregards both the logical sequence of events and the intent behind the SIM swap—to enable unauthorized access to the Plaintiff's cryptocurrency account. This failure to consider critical evidence and legal principles necessitates the vacatur of the Final Award.

Although the threshold for overturning an Arbitration Award is undeniably high, the Court's intervention in this case is crucial. Failure to act would embolden major corporations to perpetuate an arbitration system that operates solely under their control, in blatant disregard of federal law. Such inaction would set a perilous precedent, effectively eroding the rule of law and dismantling the statutory protections that are fundamental to safeguarding consumers.

Even if it is deemed permissible for an arbitrator to manifestly disregard the law, specifically the statutory duty imposed on cell phone carriers to protect Customer Proprietary Network Information (CPNI), what has emerged here is a deeply entrenched pattern of systemic corruption that was neither contemplated nor anticipated when the Federal Arbitration Act was enacted in 1925.

In this case, T-Mobile had prior knowledge of the threat before the hacker compromised Mr. Mendez's SIM, yet chose to take no action. This deliberate inaction, which directly facilitated the theft of Mr. Mendez's assets, resulted in a miscarriage of justice that has gone without any legal repercussions. The absence of accountability in this instance not only undermines the rule of law but also signals to other corporations that they can act with impunity, further entrenching systemic corruption in the arbitration process.

According to Tim Lowndes, T-Mobile's Senior Security Officer, in June 2020, over a year before the Sim Swap, T-Mobile's Edge Network[1] was an unmitigated disaster, "like somebody poured gasoline on a bonfire." Tr. 14:18-21 (Feb. 15, 2024). The whole system should have been overhauled to enable auditing of individual employee IDs in case of a security breach. However, T-Mobile didn't even do the bare minimum—whitelisting or blacklisting devices. Instead, T-Mobile buried their head in the sand while recording unprecedented profits.

According to statistics obtained by the American Association for Justice, only 1,909 consumers won a monetary award in arbitration over the five-year period from 2014 to 2019. On average, approximately 382 consumers won a monetary award each year— less than the number of people struck by lightning each year in the United States.[2]

Major corporations have collectively conspired to craft terms and conditions that systematically strip consumers of their rights. These corporations then exerted substantial influence to force consumers into arbitration—a forum skewed in their favor—where arbitrators, incentivized by the promise of repeat business, are compelled to rule in the corporation's favor. This orchestrated manipulation of the arbitration process undermines the very foundations of justice and demands

---

[1] The Edge network was part of Metro by T-Mobile and well known within the telecommunications industry to offer little to no cybersecurity protection for consumers.

[2] American Association for Justice, *The Truth About Forced* Arbitration, Sep. 2019, https://www.justice.org/resources/research/the-truth-about-forced-arbitration

immediate judicial intervention. As detailed in the attached affidavit by Law Professor Mark Rasch, it is incontrovertible that the Plaintiff would not have suffered a loss, now valued at approximately $315,000, had T-Mobile not willfully ignored the imminent threat of a SIM swap. By burying their head in the sand and failing to invest in essential cybersecurity measures, T-Mobile's negligence directly facilitated the attack, leading to the devastating financial loss endured by the Plaintiff.

Major corporations must be curtailed from imposing draconian terms and conditions that strip consumers of their federally protected rights. This Court must act to prevent the continued abuse of arbitration processes designed to favor corporate interests over justice.

## **SUMMATION**

Laws are enacted to uphold justice and protect the rights of individuals, particularly in areas as sensitive as the protection of Customer Proprietary Network Information (CPNI). In this case, Arbitrator Reich blatantly disregarded her duty by adhering to T-Mobile's terms and conditions, which unlawfully sought to circumvent federal law. Despite clear and compelling testimony from cybersecurity experts and legal professionals, who meticulously detailed the violations of federal law, Arbitrator Reich chose to ignore these authoritative voices. Her actions represent a gross overreach of her powers and a disregard for established legal principles designed to safeguard individuals' most private and sensitive information.

Cell phones are the gateways to people's most intimate secrets, financial accounts, stock portfolios, and cryptocurrency holdings. Recognizing this, federal law unequivocally mandates the protection of CPNI. Arbitrator Reich's failure to enforce these statutory protections not only exceeds her powers but also constitutes a dereliction of duty. Her decision undermines the very

foundation of federal law, which exists to ensure that such sensitive information is protected at all costs.

If this Court interprets the law to permit an arbitrator to act with such disregard for established legal protections, then it is clear that the law itself must be reexamined. The intent of the 1925 Federal Arbitration Act was unequivocally clear: arbitrators are bound to uphold and apply the law faithfully, ensuring that arbitration serves as a fair and lawful alternative to judicial proceedings, rather than a mechanism for circumventing legal protections. The Court is respectfully requested to vacate the arbitration ruling issued by Arbitrator Reich on April 24, 2024, as she exceeded her powers by effectively abrogating established federal law, including a blind failure to apply the principles of proximate cause, and by permitting a company to enforce terms and conditions that are in direct contravention with established federal law.

WHEREFORE, it is requested that this Honorable Court vacate the arbitration award dated April 24, 2024, Case Number: 01-22-0001-1162, Edward Mendez v. T-Mobile USA, Inc., accept jurisdiction to adjudicate the FCA claim, and grant any further relief that the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and complete copy of this document was electronically filed with the Southern District of Florida on the 12th day of August 2024.

Respectfully submitted,

Shrayer Law Firm, LLC.
912 South Andrews Avenue
Fort Lauderdale, FL 33316
Tel.   (954) 601-3732
Email:ghs@shrayerlaw.com

**/s/  Glen H. Shrayer**
 Glen H. Shrayer, Esq.
 FL Bar No. 57253